IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  No. CR 23-1352 JB

RICARDO LANDEROS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Objection to the Presentence Investigative Report, filed September 24, 2025 (Doc. 106)("Objections"). The primary issue is whether the United States Probation Office's Presentence Investigation Report, filed September 3, 2025 (Doc. 97)("PSR") should apply a 2-level enhancement pursuant to U.S.S.G § 2B1.1(b)(12), because Defendant Ricardo Landeros' offenses of conviction involve conduct that 18 U.S.C. § 1040 describes -- fraud in connection with the Paycheck Protection Program (PPP), which authorizes the disbursement and payment of major disaster or emergency benefits in response to the COVID-19 pandemic.  The Court concludes that the 2-level enhancement pursuant to U.S.S.G § 2B1.1(b)(12) does apply, because Landeros' offenses of conviction do involve conduct that 18 U.S.C. § 1040 describes -- fraud in connection with the Paycheck Protection Program (PPP), which authorizes the disbursement and payment of major disaster or emergency benefits in response to the COVID-19 pandemic.

## FACTUAL BACKGROUND

The United States does not object to the PSR facts.  See Objections at 7-8.  Those undisputed facts are the Court's findings of fact.  See Fed. R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").

In late 2019, the worldwide COVID-19 pandemic began, which causes severe economic disruption and the largest recession around the globe since the Great Depression. See PSR ¶ 13, at 4. President Trump shortly declares the pandemic a Presidential Disaster or Emergency throughout the United States. See PSR ¶ 13, at 4. Congress passes the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. §§ 9001-9141 ("CARES Act") -- a multi-trillion dollar stimulus bill -- in March, 2020, to combat the pandemic's economic fallout by providing emergency financial assistance to millions of affected citizens. See PSR ¶ 16, at 5. One of the sources of relief that the CARES Act provides is the authorization of forgivable loans to small business for job retention and certain other expenses through a program referred to as the PPP. See PSR ¶ 17, at 5.

For a small business to obtain a PPP loan, a business' authorized representative has to submit an application. See PSR ¶ 18, at 5. The representative has to sign the application in addition to acknowledging the PPP rules, and has to make certain affirmative certifications for the business to be eligible. See PSR ¶ 18, at 5. Under the PPP's terms, the business can only use the money for certain permissible expenses, including payroll, rent, and utilities. See PSR ¶ 19, at 5.

Another federal program is the Economic Injury Disaster Loan Program ("EIDL Program"), which provides low-interest financing to small businesses, renters, and homeowners that various disasters affect. See PSR ¶ 20, at 5. In addition to authorizing the PPP, the CARES Act extends EIDL Program loans of up to two million dollars to qualifying businesses experiencing financial hardship, as well as authorizing emergency advances of up to $10,000.00 to businesses within three days of applying for the EIDL program loans. See PSR ¶ 20, at 5. Just like with the PPP, for a small business to obtain an EIDL Program loan, the business' authorized representative has to submit an application, certifying that everything in the application is correct, as well as agreeing that the business will use the funds solely as working capital for authorized categories of

expenses to alleviate the economic injury caused by the pandemic.  See PSR ¶ 21, at 6.  As a general rule, if an applicant for an EIDL program also obtains funds through the PPP, the business cannot use the two amounts of money for the same purpose.  See PSR ¶ 21, at 6.

Beginning in approximately March, 2020, Landeros along with co-Defendants Jaqueline Rascon-Chacon and Bryan Gardea knowingly and intentionally devise and execute a scheme to defraud participating lenders and the Small Business Administration ("SBA").[1]  PSR ¶ 25, at 7. The scheme involves submitting loan applications containing materially false information with fabricated supporting documentation, including misrepresentations regarding the true nature of their businesses, their number of staff members, and their payroll expenses.  See PSR ¶ 25, at 7. Based on these misrepresentations, lenders and the SBA issue the Defendants multiple loans, which the Defendants do not use according to the applicable PPP or EIDL program rules and guidelines, but instead use the money for personal purposes, including paying off personal debts, gifting themselves luxury goods and services, and purchasing real estate properties to develop and resell.  See PSR ¶ 25, at 7.

 Around May 16, 2020, with guidance from Gardea, Landeros submits a loan application to the SBA containing materially false information and fabricated supporting documentation, requesting a PPP loan to help A&R Drilling LLC, a corporation that Landeros organizes in early October, 2019, which lists Landeros as the organizer and registering agent.  See PSR ¶¶ 32-33, at 8.  The false information includes the business not operating in the way that the application

---

[1] The SBA is an executive-branch agency of the United States government that provides financial support to entrepreneurs and small businesses.  See PSR ¶ 14, at 4.  The SBA's mission is to maintain and strengthen the United States' economy by enabling the establishment and viability of small businesses, as well as assisting in the recovery efforts of communities after various disasters.  See PSR ¶ 14, at 4-5.  As part of these recovery efforts, the SBA enables and provides for loans with government-backed guarantees offered through banks, credit unions, and other lenders.  See PSR ¶ 15, at 5.  In some cases, the SBA also acts as a lender itself.  See PSR ¶ 15, at 5.

describes and overstating the number of people whom the business employs.  See PSR ¶ 33, at 8. DreamSpring, a financial institution, approves the loan, and disburses $172,802.00 into a bank account that JAGA Networks owns.  See PSR ¶ 33, at 8.

On February 12, 2021, all three Defendants use a bank account held in the name of JAGA Networks managed by Rascon-Chacon, to negotiate a check in the amount of $209,368.70, derived from the sale of a property in Albuquerque.  See PSR ¶ 39, at 10.  Similarly, the Defendants use the same account to negotiate a check in the amount of around $185,544.00 on March 11, 2021, derived from the sale of another property in Albuquerque.  See PSR ¶ 39, at 10.

Around March 15, 2021, again with guidance from Gardea, Landeros submits a second loan application containing materially false information and fabricated supporting documentation to the SBA requesting that the SBA issue a PPP loan to help A&R Drilling.  See PSR ¶ 34, at 8. The false information includes representations of renting workspace at an address that is an address on a genuine lease agreement for JAGA Networks, where Rascon-Chacon previously operates a cellphone store.  See PSR ¶ 42, at 11.  Although Gardea is the one to create the fabricating supporting documentation, which Landeros neither signs nor initials, Landeros and Gardea conspire to provide the documentation to the lender during the application process, and Landeros certifies in the application that everything in the application is true.  See PSR ¶ 34, at 8. DreamSpring approves the loan, and disburses $149,000.00 into a bank account that Landeros owns.  See PSR ¶ 34, at 8.  From approximately January, 2020 to May, 2022, the Defendants knowingly and intentionally conduct financial transactions affecting interstate commerce, and involving the unlawful activities' proceeds.  See PSR ¶ 36, at 9.  The transactions constitute wire fraud and bank fraud, and are designed, in whole or in part, to conceal and disguise the proceeds of the Defendants' unlawful activities.  See PSR ¶ 36, at 9.

## PROCEDURAL BACKGROUND

On September 6, 2023, the Grand Jury files an Indictment in the United States District Court for the District of New Mexico, charging Landeros as follows:

> Count 3: Rascon-Chacon, Gardea, and **Landeros** with Wire Fraud. The offense occurred from on or about March 2020, and continued to on or about May 2022, in Bernalillo County and elsewhere.

> Count 9: Rascon-Chacon, Gardea, and **Landeros** with Wire Fraud and Aiding and Abetting. The offense occurred on May 16, 2020, in Bernalillo County and elsewhere.

> Count 10: Rascon-Chacon, Gardea, and **Landeros** with Wire Fraud and Aiding and Abetting. The offense occurred on March 15, 2021, in Bernalillo County and elsewhere.

> Count 11: Rascon-Chacon, Gardea, and **Landeros** with Conspiracy to Commit Money Laundering. The offense occurred from on or about January 2020 and continued to on or about May 2022, in Bernalillo County and elsewhere.

> Count 13: Rascon-Chacon, Gardea, and **Landeros** with Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity and Aiding and Abetting. The offense occurred on February 12, 2021, in Bernalillo County and elsewhere.

> Count 14: Rascon-Chacon, Gardea, and **Landeros** with Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity in Aiding and Abetting. The offense occurred on March 22, 2021, in Bernalillo County and elsewhere.

PSR ¶ 1, at 3. On January 9, 2025, Landeros pleads guilty to Counts 10 and 14 of the fourteen-count Indictment. See PSR ¶ 2, at 3. Count 10 charges Wire Fraud and Aiding and Abetting, in violation of 18 U.S.C. §§ 1343 and 2. See PSR ¶ 2, at 3. Count 14 charges Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity and Aiding and Abetting, in violation of 18 U.S.C. §§ 1957(a) and 2. See PSR ¶ 2, at 3.

On September 3, 2025, the United States Parole Office ("USPO") files the PSR, which applies a total offense level of 15 for Counts 10 and 14. See PSR ¶ 60, at 13. On September 24, 2025, the United States files the Objections, which make one Objection to the PSR. See Objections at 1. The United States argues that the Court should enhance the offense level by 2-levels pursuant

to U.S.S.G. § 2B1.1(b)(12), which applies if the offense involves conduct that 18 U.S.C. § 1040 describes. See Objections at 2. A defendant commits the offense of fraud in connection with major disaster or emergency benefits, in violation of 18 U.S.C. § 1040(a)(2), when the defendant makes any materially false, fictitious, or fraudulent statement or representation, or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or representation, in any matter involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5170, or, pursuant to an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5191, (collectively "Stafford Act"). Objections at 2-3. The United States argues that Landeros satisfies U.S.S.G. § 2B1.1(b)(12), because his offenses of conviction involve conduct that 18 U.S.C. § 1040 describes, namely, fraud in connection with the PPP, which authorizes the disbursement and payment of major disaster or emergency benefits in response to the COVID-19 pandemic. See Objections at 1. The United States maintains that the funds do not need to have a direct relationship with the Stafford Act emergency declaration which § 1040 references, but instead only needs to relate to the major disaster or emergency that prompts the Stafford Act declaration -- in this case, the COVID-19 pandemic -- for the enhancement to apply. See Objections at 3-4.

On January 13, 2026, Landeros files his Response in Opposition to Government's Objection to Presentence Investigation (Doc. 97), filed January 13, 2026 (Doc. 118)("Response). Landeros interprets a violation of § 1040 to occur when a defendant commits fraud in connection with a major disaster declaration or an emergency declaration under the Stafford Act, and therefore understands the question before the Court in regards to the § 2B1.1(b)(12) enhancement to be whether Landeros' conduct, obtaining fraudulent PPP loans, constitutes a violation of the Stafford

Act.  See Response at 2.  Landeros argues that, because his charged conduct involves only PPP loans, and because there is no evidence to support the contention that the PPP loans are connected to a Stafford Act declaration, that the 2-level enhancement pursuant to § 2B1.1(b)(12)  is not appropriate and that the Court should not impose the enhancement.  See Response at 3.

On January 22, 2026, the United States files its Reply in Support of Objection to Presentence Investigation Report, filed January 22, 2026 (Doc. 119)("Reply").  The United States argues that Landeros asks the Court to engage in an overly narrow reading of § 2B1.1(b)(12) to require that the enhancement applies only if a defendant's conduct constitutes a violation of the Stafford Act.  See Reply at 1.  The United States contends that the correct interpretation is that the § 2B1.1(b)(12) enhancement applies to all benefits fraud that relates to a major disaster or emergency that receive a Stafford Act declaration, even if the benefits do not flow through the Stafford Act.  See Reply at 1.  Looking at § 1040's structure, context, and history, the United States concludes that the correct reading of § 1040 is that it describes conduct including fraud in relation to benefits paid in connection with a disaster or emergency that is the subject of a Stafford Act declaration.  See Reply at 3-7.

The USPO files an Addendum to the Presentence Report on March 27, 2026.  See Addendum to the Presentence Report, at 1, filed March 27, 2026 (Doc. 123).  In the Addendum, the USPO reverses its position from the PSR, and applies the enhancement under U.S.S.G. § 2B1.1(b)(12) for fraud in connection with PPP loans during the COVID-19 pandemic.  See Addendum at 2.  The USPO states that, "upon further review, the District Court in the Griffin case [United States v. Griffin, 2024 WL 1505512] presented a compelling argument.  While the PPP loans were technically authorized separately from direct pandemic relief, the benefits were intended to assist individuals and businesses impacted by the pandemic."  Addendum at 2.  Accordingly, the USPO concludes "that a conviction under 18 U.S.C. § 1040 is not required for

the enhancement to apply.  Instead, the increase is applicable as long as the conduct violated the statute."  Addendum at 2.  The USPO, therefore, applies the enhancement under U.S.S.G. § 2B1.1(b)(12).

## ANALYSIS

The Court sustains the United States' Objection.  The Court sustains the United States' Objection to add a 2-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(12).  The Court concludes that 18 U.S.C. § 1040 is broad enough to encompass fraud regarding funds that stem from an emergency which is the subject of a Stafford Act Declaration, and does not cover only fraud regarding funds that come directly from a Stafford Act Declaration.

I.    **THE COURT SUSTAINS THE UNITED STATES' OBJECTION TO ADD A 2-LEVEL EHANCEMENT PURSUANT TO U.S.S.G  § 2B1.1(b)(12).**

Section 2B1.1(b)(12) applies a 2-level enhancement if the offense involves conduct that 18 U.S.C. § 1040 describes.  U.S.S.G. § 2B1.1(b)(12).  18 U.S.C. § 1040 states in relevant part:

(a)    Whoever, in a circumstance described in subsection (b) of this section, knowingly--

(1)    falsifies, conceals, or covers up by any trick, scheme, or device any material fact; or
(2)    makes any materially false, fictitious, or fraudulent statement or representation, or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or representation,

in any matter involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170) or an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5191) . . . .

18 U.S.C. § 1040.  The United States argues that § 1040 is written broadly so as to encompass benefits fraud related to a major disaster or emergency that receives a Stafford Act declaration, even if the benefits do not flow directly through the Stafford Act.  See Reply at 1.  Congress does

not create PPP loans, which Landeros obtains fraudulently, under the Stafford Act. See Reply at 2. Instead, Congress creates the PPP program when it passes the CARES Act, which Congress enacts in response to the COVID-19 outbreak and because of COVID's impact on the economy, public health, State and local governments, individuals, and businesses. See Reply at 2. According to the United States' reading of § 1040, the PPP program's connection to the COVID-19 pandemic, a declared Stafford Act emergency, is sufficient to qualify Landeros' conduct as conduct that § 1040 describes such that the enhancement pursuant to § 2B1.1(b)(12) applies. By contrast, Landeros argues that § 1040 describes only conduct of fraud committed directly in connection with the Stafford Act, such that Landeros' conduct of fraudulent PPP loans does not justify the application of the § 2B1.1(b)(12) enhancement. See Response at 2.

The Court begins by looking at the statute's text. See Been v. O.K. Industries, Inc., 495 F.3d 1217, 1227 (10th Cir. 2007)("We review issues of statutory construction de novo, 'interpret[ing] the words of the statute in light of the purposes Congress sought to serve.'")(quoting Wright v. Fed. Bureau of Prisons, 451 F.3d 1231, 1233-34 (10th Cir.2006)). Section 1040 regulates fraud "involving any benefit" "authorized . . . [or] paid . . . in connection with a major disaster declaration" or emergency declaration under the Stafford Act. 18 U.S.C. § 1040. The phrase "in connection with a . . . declaration," specifically the inclusion of the word declaration, could restrain § 1040's scope to fraudulent conduct relating to benefits paid in direct connection with a Stafford Act declaration, instead of benefits paid in connection with the emergency or disaster that cause a Stafford Act declaration. The Court notes, however, that the phrase "in connection with" can bear a "broad interpretation," Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006), and, the Supreme Court recognizes that "'in connection with' is essentially indeterminate because connections, like relations, stop nowhere." Maracich v. Spears, 570 U.S. 48, 59 (2013)(quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.

Co., 514 U.S. 645, 655 (1995))(internal quotation marks omitted).  The Court, therefore, does not foreclose the possibility that benefits that the United States does not pay directly as a result of a Stafford Act declaration still may constitute benefits paid "in connection with" a Stafford Act declaration.

Further, the Court concludes that looking at § 1040 as a whole leads to the conclusion that "in connection with a major disaster declaration" extends to benefits paid as a result of the emergency that causes the Stafford Act declaration and not only benefits paid directly under the Stafford Act declaration.  18 U.S.C. § 1040.  Section 1040(b) is the jurisdictional provision which determines when § 1040 applies.  Section 1040(b) provides three jurisdictional hooks, extending the statute to cover benefits which (i) are provided "in or affect[ing] interstate or foreign commerce," (ii) are provided through the mail, or (iii) come from the federal government.  18 U.S.C. § 1040(b).  These jurisdictional hooks, taken together, suggest that Congress intends for § 1040 to reach all benefits that are provided in connection with a Stafford Act emergency or major disaster, because benefits that are paid specifically pursuant to or as a result of a Stafford Act declaration nearly always come from the United States.  See Barbosa v. United States Dep't of Homeland Sec., 916 F.3d 1068, 1069 (D.C. Cir. 2019)(explaining that the Stafford Act program's traditional approach is to "disburse federal funds to the states, which in turn disburse those funds to individuals"); Church v. Polis, No. 20-1391, 2022 WL 200661, at * 9 (10th Cir. Jan. 24, 2022)(stating that the Stafford Act "authorizes the president to provide disaster relief in certain emergency situations").[2]  If the Court limits § 1040 to direct Stafford Act declaration funds, in

_____

[2] Church v. Polis is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

essence federal funds, then there is no need to provide a federal nexus for the funds such as "affect[ing] interstate or foreign commerce," or payments sent through the mail. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001)("The phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause.").  Even more persuasively, the fact that the statute states explicitly that benefits which come from the "United States, or of any department or agency thereof" are included within the scope of § 1040 leads to the conclusion that the statute contemplates benefits which originate from somewhere other than the United States.  Finally, § 1040(c) defines "benefit" to mean any payment "provided by the United States, a State or local government, or other entity."   18 U.S.C. § 1040(c). Funds that originate from Stafford Act declarations are almost entirely federal, and so the inclusion of funds from non-federal entities in the statute's definitional section indicates an intent to expand the scope of § 1040 beyond the narrow cabin of fraud involving funds directly from Stafford Act declarations to fraud involving funds that relate to the emergency which is the subject of the Stafford Act declaration.

The Court acknowledges that the statute's language is ambiguous.  There is ambiguity, because the Stafford Act works by providing federal funds to State and local non-governments, as well as to certain nonprofit organizations and individuals, and therefore there is an argument that § 1040 as written is meant to capture fraud relating to all funds provided under the Stafford Act

---

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Church v. Polis has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

declaration, whether the defendant fraudulently obtains these funds directly from the United States government or after the United States disperses these funds to the States, local government, or private entities.  See ELIZABETH WEBSTER ET AL., CONG. RSCH. SERV., R46326, STAFFORD ACT DECLARATIONS FOR COVID-19 FAQ 7 (2020)("Federal assistance made available pursuant to Stafford Act declarations is intended to supplement local efforts to respond to and recover from emergencies and major disasters.  Federal assistance may support state, territorial, tribal, and local governments, certain nonprofit organizations, and individuals and households.").  Looking at the legislative history, however, the Court concludes that it supports the determination that § 1040 is not narrow, but instead encompasses the fraud of all benefits that relate to an emergency which is the subject of a Stafford Act declaration.  See McGraw v. Barnhart, 450 F.3d 493, 499 (10th Cir. 2006)("'If [a statutory] ambiguity is found, a court may seek guidance from Congress's intent, a task aided by reviewing the legislative history.'")(quoting United States v. Quarrell, 310 F.3d 664, 669 (10th Cir. 2002)).

Congress enacts § 1040 in the Emergency Disaster Assistance Fraud Penalty Enhancement Act, Pub. L. No. 110-179, 121 Stat. 2556 (2008), to create "a new criminal penalty specifically targeted at fraud in connection with major disaster or emergency benefits."  H.R. REP. NO. 109-473, at 2 (2006).  See S. REP. NO. 110-69, at 4 (2007)(stating that the law "[i]n addition to creating a new federal crime that specifically prohibits fraud in connection with any emergency or disaster benefit (including federal assistance or private charitable contributions) . . .").  The language in connection with "any emergency or disaster benefit (including federal assistance or private charitable contributions)" demonstrates Congress' intention for § 1040 to cover broadly fraud in connection to any benefit which stems from an emergency or disaster that is the subject of a Stafford Act declaration, instead of cabining it narrowly to benefits that flow through the Stafford Act.  S. REP. NO. 110-69, at 4.  That Congress enacts § 1040 in response to the extensive fraud which follows

Hurricanes Katrina and Rita supports the Court's conclusion, and the Committee reports highlight instances of fraud involving benefits with no direct connection to Stafford Act declarations. See S. REP. NO. 110-69, at 2-3 (noting creation of "phony Katrina-related websites to exploit those who wished to contribute to legitimate disaster assistance efforts" and a volunteer who stole Red Cross funds intended for Katrina victims); H. REP. NO. 109-473, at 2 (same). The Court determines that the context in which Congress enacts § 1040, along with § 1040's express purpose, supports the conclusion that Congress intends § 1040 to apply broadly to all fraud in connection with emergency or disaster benefits when that emergency or disaster is the subject of a Stafford Act declaration, and not solely to emergency or disaster benefits which stem from a Stafford Act declaration.

In so concluding, the Court does not apply the rule of lenity to interpret the facially ambiguous statute in Landeros' favor. "'The rule of lenity requires courts to interpret ambiguous statutes, including the Sentencing Guidelines, in favor of criminal defendants.'" United States v. Tony, 121 F.4th 56, 69 (10th Cir. 2024)(quoting United States v. Gay, 240 F.3d 1222, 1232 (10th Cir. 2001)). The rule of lenity, however, applies only "'where a statute is facially ambiguous and resort to the legislative history does not reveal the congressional intent of the language.'" United States v. Serawop, 505 F.3d at 1121 (quoting United States v. Wilson, 10 F.3d 734, 736 (10th Cir. 1993)). "The rule of lenity presupposes the application of a punitive, ambiguous statute, and we apply it 'only if, after seizing everything from which aid can be derived, . . . we can make no more than a guess as to what Congress intended.'" United States v. Serawop, 505 F.3d at 1121-22 (quoting Muscarello v. United States, 524 U.S. 125, 138 (1998)). Here, the legislative history shines a light on what Congress intends when it enacts § 1040, and the Court determines that this intention is to apply § 1040 broadly to fraud relating to any emergency or disaster funds when that emergency is the subject of a Stafford Act declaration. Accordingly, the rule of lenity does not apply, and the Court determines that § 1040 encompasses Landeros' conduct in committing fraud in relation to

PPP loans under the CARES Act. The Court therefore sustains the United States' Objection and applies the 2-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(12).

IT IS ORDERED that: (i) the United States' Objection to the Presentence Investigative Report, filed September 24, 2025 (Doc. 106) is sustained; (ii) the 2-level U.S.S.G. § 2B1.1(b)(12) enhancement applies; (iii) the applicable offense level is 17; (iv) the applicable criminal history category is I; (v) the United States Sentencing Guidelines establish an imprisonment range of 24 to 30 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd Blanche
  Acting United States Attorney General
Ryan Ellison
  First Assistant United States Attorney
Holland Kastrin
Sean Sullivan
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Nicole Moss
The Law Office of Nicole Moss LLC
Albuquerque, New Mexico

  *Attorney for the Defendant*